**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| NSHAN KHUDANYAN      )<br>    ID# 1432095         )<br>        Petitioner,     )<br>                        )<br>vs.                     )<br>                        )<br>RICK THALER,[1] Director,  )<br>Texas Department of Criminal )<br>Justice, Correctional Institutions Division, )<br>        Respondent.     ) | No. 3:09-CV-1307-D (BH)<br><br>Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred for findings, conclusions, and recommendation.

**I. BACKGROUND**

On July 7, 2009, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2254 challenging his conviction for manslaughter in cause F03-14213-QS. Respondent is Rick Thaler, Director of TDCJ-CID.

**A. Factual History**

On November 13, 2003, the State indicted petitioner for the murder of Vladimir Mozhayev, alleged to have occurred on or about September 26, 2003. (Trial Transcript:2). Although petitioner pled *nolo contendere* to the first-degree murder charge, the issue of guilt or innocence was tried before the court on April 26-28, 2005. The court found that the evidence substantiated a finding of guilt on the lesser-included offense of manslaughter but withheld finding petitioner guilty until sentencing. (R. 5:55-56). After hearing from one State's witness and three defense witnesses during

---

[1] The previously-named respondent in this action was Nathaniel Quarterman. On July 15, 2009, Rick Thaler succeeded Nathaniel Quarterman as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, he "is automatically substituted as a party."

the punishment phase, the court found petitioner guilty of manslaughter and sentenced him to eight years imprisonment. (R. 6:36).

The state appellate court recounted the evidence presented at trial as follows:

> On September 26, 2003, Dar Arenberg and Vladimir Mozhayev went to a restaurant known as Avanti's in Addison, Texas. The two men, who are from Russia, liked to go to Avanti's because it featured Russian music and many other Russians went there. They ran into some female friends and sat on the outdoor patio with them. While Arenberg was dancing with one of the young women in their group, Appellant suddenly approached Arenberg and yelled in his face. Arenberg did not react to the provocation and his dance partner told Appellant to relax because she knew Arenberg and Mozhayev. Arenberg and Mozhayev remained with the group of women until nearly closing time. As he walked out, Arenberg saw the same woman he had been dancing with earlier seated at a table and talking with Mozhayev. Arenberg knew she was returning to Russia the next day, so he said, "[G]ood luck, say hello to the Motherland." Appellant, who was seated nearby, became angry and started cussing Arenberg in Russian. Angry, Arenberg invited him to go outside and talk. As he proceeded outside, Arenberg turned around and saw Appellant and three other men following him. Once outside, Arenberg punched Appellant in the chin, and all four men began punching and kicking him until his face was bleeding. The beating continued for a while but eventually the group stopped beating Arenberg and left him alone. Bleeding from the face, Arenberg made his way back into the restaurant to find Mozhayev and he heard Appellant screaming, "Don't come back to restaurant!" After he found Mozhayev, a fight broke out between Appellant's group, which included several women, and Arenberg and Mozhayev. Arenberg could not see because blood was getting into his eyes and one of the women was holding his hair while men hit him. The owner of the restaurant and a patron saw Appellant pick up a bottle of wine from a rack and strike Mozhayev's head with it.[2]
> 
> Once the fight was over, Arenberg went into the restroom to find tissue for his face and head wounds. When he exited, he saw that police officers had arrived and they escorted him outside. Arenberg and Mozhayev sat on a bench together outside of the

---

[2] In his pre-sentence investigation report, Appellant claimed that he threw the wine bottle but did not intent to hit Mozhayev with it.

> restaurant and had a short conversation. Seconds after telling Arenberg that someone had hit him in the head with a bottle, Mozhayev became unconscious and collapsed. Mozhayev was taken to a hospital and subsequently died of a closed head injury despite emergency cranial surgery.

*Khudanyan v. State*, No. 08-05-00368-CR, slip op. at 2-3 (Tex. App.–El Paso, Dec. 7, 2006, no pet.).

## B. Procedural History

On June 15, 2005, petitioner filed an amended motion for new trial with the trial court alleging that his plea was involuntary because he received erroneous information and advice about immigration issues, and that trial counsel was ineffective for failing to fully investigate the case. (Tr.:30-1). The trial court held a hearing on July 28, 2005. (R. 7:cover). After hearing testimony from petitioner, the three defense witnesses who testified at punishment, one of petitioner's co-defendants, and petitioner's trial attorney, the court denied the motion for new trial. (R. 7:100).

On direct appeal, petitioner's sole point of error alleged that the trial court had erred in entering a deadly weapon finding in the judgment. Petitioner's conviction was affirmed on direct appeal. No petition for discretionary review was filed. *Khudanyan v. State*, No. 08-05-00368-CR (Tex. App. – El Paso, Dec. 7, 2006, no pet.).

Petitioner filed a state habeas application on November 16, 2007, alleging the same grounds for relief he raises in his federal petition. (Supp. State Habeas Transcript:2-3). Petitioner's trial attorney submitted an affidavit. (State Habeas Transcript:34). The trial court made findings recommending that relief be denied, based in part on this affidavit and on the testimony given by petitioner's trial attorney at the hearing on the motion for new trial. (S.H.Tr.:26-33). On June 17, 2009, the Court of Criminal Appeals denied relief without written order on the basis of the findings without a hearing. (S.H.Tr.:cover).

On July 7, 2009, petitioner filed his petition for federal habeas relief. (*See* Pet. Writ of

3

Habeas Corpus (Pet.) at 7).[3] Respondent filed a response on September 9, 2009, and provided the state court records. No reply brief was filed.

**C. Substantive Issues**

Petitioner claims that: 1) his trial counsel was ineffective for failing to investigate the case, to interview the State's witnesses, and to present mitigating evidence; 2) his plea was not knowingly and voluntarily made because his attorney never told him about the immigration consequences of his plea and the trial court never admonished him about the immigration consequences of his plea; and 3) the prosecutor told a witness not to speak to anyone about the case prior to trial.

Respondent does not contend that petitioner failed to exhaust any of his claims at the state level.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] *See also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). Here, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ. The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply to the claims raised in petitioner's federal petition.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first ground for relief, petitioner asserts that his trial counsel was ineffective for failing to investigate the case, interview State's witnesses and present mitigating evidence. Petitioner also asserts that his attorney believed that he was guilty of first-degree murder although the facts of the case did not support a conviction for murder.

To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but

6

for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

At the state habeas level, petitioner's trial counsel submitted an affidavit. The affidavit states that he thoroughly investigated the case and that he was able to interview petitioner's co-defendants before they obtained attorneys. After this investigation, counsel determined that there was no question that petitioner had hit the victim with a wine bottle and that petitioner was the leader of a group of people who had assaulted another man. Counsel also states in his affidavit that petitioner wanted witnesses to testify at trial differently from what they actually observed. With respect to the punishment phase of the trial, because the trial judge did not find petitioner guilty of manslaughter at the conclusion of the guilt phase of the trial, petitioner could have received deferred adjudication. The trial judge ordered that a pre-sentence report be prepared, and when a probation officer interviewed petitioner, he said that the victim had basically gotten what he deserved and that he would probably do the same thing again. Counsel states that this was the reason that the probation

7

department did not recommend probation, and that petitioner was fortunate that he only received an eight-year sentence from the judge. (S.H.Tr.:34).

When addressing this issue, the state habeas court found that counsel thoroughly investigated the case, prepared witnesses for trial and presented as much mitigating evidence as possible, considering petitioner's statements to the probation department and lack of remorse. (S.H.Tr.:29-30). The state habeas court then concluded that petitioner had failed to prove ineffective assistance of counsel. (S.H.Tr.:31). Based on these findings, this ground was denied at the state level. (S.H.Tr.:cover). Petitioner has not shown that the state court's decision is an unreasonable application of the *Strickland* standard.

First, petitioner has not overcome the "strong presumption" that counsel's conduct was not deficient. *See Strickland*, 466 U.S. at 689. While petitioner asserts that his attorney failed to interview witnesses and otherwise investigate the case, petitioner has presented no support for this assertion. The record shows that counsel interviewed petitioner's co-defendants prior to trial. Furthermore, the record from the trial reveals that counsel cross-examined the State's witnesses vigorously, (R. 3:62-74, 82; R. 4:32-47, 72-81, 103-11, 130-34, 206-13), referred to their prior statements to the police, (R. 4:34-67, 72-5, 159-61), entered one witness's prior written statement into evidence at one point, (R. 4:81), and called an eyewitness who testified that petitioner was not the aggressor, (R. 5:4-20). The record supports the trial court's factual finding that counsel fully investigated the case. Moreover, petitioner has failed to show prejudice. As a result of his attorney's work on the case, he was found guilty of the lesser-included offense of manslaughter rather than murder. Petitioner has not shown a reasonable probability that he would not have been convicted of this offense had additional investigation occurred, especially given that two eyewitnesses testified that they saw petitioner purposely hit the victim on the head with a full wine

8

bottle. (R. 4:24-7, 62-3).

As for mitigation evidence, trial counsel called three witnesses at the punishment phase of the trial to testify about petitioner's close relationship with his two young children, his involvement with his church, and his history of non-violent behavior. (R. 6:12-26). Petitioner has failed to state what other mitigation evidence was available. Petitioner has also failed to establish prejudice because he has failed to show a reasonable probability that he would have received a lesser sentence had additional unknown mitigating evidence been presented. The pre-sentence investigation report was presented at punishment at the request of the trial judge. (R. 6:5). It said that the probation officer did not recommend probation because: 1) petitioner continuously stated that the witnesses who identified him as the one hitting the victim with a wine bottle were liars because he only threw the bottle; 2) petitioner told her that he was not guilty and that he acted in self-defense; 3) the nature of the offense; and 4) petitioner's statement to the police at the scene that he wanted to "kill the bitch" and fight him again, indicating a lack of remorse. (R. 8:Motion for New Trial, Defense Ex. #5). Given this recommendation by the probation department based on petitioner's own statements in which he declined to accept responsibility and showed a lack of remorse, petitioner can show no reasonable probability that he would have received a lower sentence had additional mitigating evidence been presented. This ground for relief is therefore without merit and should be denied.

### IV. VOLUNTARINESS OF PLEA

In his second ground for relief, petitioner asserts that his *nolo contendere* plea was involuntary because his attorney told him "not to worry about deportation," and the trial court never admonished him of the immigration consequences of a guilty or no contest plea.

A plea of guilty or *nolo contendere* waives a number of constitutional rights.[4] *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). The Fourteenth Amendment Due Process Clause imposes certain requirements to ensure the validity of such a plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)). "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead . . . was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988). *Boykin* also sets out "the contemporary standards for plea bargain admonishments."[5] *See United States v. Barlow*, 17 F.3d 85, 89 (5th Cir. 1994).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Before the trial court may accept a

---

[4] In general, the law applicable to guilty pleas is equally applicable to pleas of *nolo contendere*. *Matthew v. Johnson*, 201 F.3d 353, 360 n.9 (5th Cir. 2000); *Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990).

[5] Fed. R. Crim. P. 11(c) "codifies" the *Boykin* admonishments. *See* Fed. R. Crim. P. 11(c) advisory committee's note on 1974 amendments.

10

guilty plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)). In determining whether a plea is voluntary and intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor*, 933 F.2d at 329.

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Id.* "A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent." *James*, 56 F.3d at 666. A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam). "When considering challenges to guilty plea proceedings, [the courts] have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). The consequences of a guilty plea means only that the defen-

dant knows "the maximum prison term and fine for the offense charged." *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (internal quotations omitted).

At the state habeas level, the trial court found that petitioner was admonished that the entire punishment range was available to the court for sentencing, and he was advised by his attorney of the possibility of deportation unless he proceeded to trial and received a not guilty verdict. (S.H.Tr.:30). The court then concluded that petitioner freely and voluntarily entered his plea. (S.H.Tr.:31). Based on these findings, relief was denied. (S.H.Tr.:cover). This denial is not contrary to federal law. That petitioner did not understand the deportation consequences of his guilty plea does not render his plea involuntary, unknowing, nor unintelligent. Due process simply requires that he understand the "direct consequences" of his plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). Deportation consequences are merely collateral consequences to the plea. *United States v. Banda*, 1 F.3d 354, 356 (5th Cir. 1993).

Moreover, the record reflects that petitioner was advised about the deportation consequences of his plea. When petitioner pled *nolo contendere*, the trial judge advised him on the record that because he was not a United States citizen, a no contest plea may result in his deportation, exclusion of admission to this country, or denial of naturalization. The trial judge then asked petitioner whether he understood this, and petitioner stated on the record that he did. (R. 3:6-7). Petitioner's trial attorney testified at the hearing on the motion for new trial that he recommended to petitioner that he plead *nolo contendere* because, in his professional opinion, the best result that could be obtained would have been deferred adjudication for manslaughter. Counsel also testified that he believed that the trial judge was leaning towards it being a manslaughter case, and that petitioner would have a "shot" at probation whereas probation would not have been possible had petitioner pled not guilty to the charge. (R. 7:58-9). Counsel also testified that he was aware that petitioner is not

a United States citizen and that deferred adjudication can be a final conviction for immigration purposes, and counsel informed petitioner that he would have immigration problems regardless of what happened. (R. 7:60-1). The attorney explained that he believed that petitioner would be found guilty of murder, which could result in a life sentence, if he went to trial. Because the only result that would keep petitioner from possibly being deported was a not guilty verdict with respect to murder or any lesser-included offenses, and he knew the facts were not in dispute that petitioner killed the victim by striking him in the head with a wine bottle, counsel believed that the best course of action was for petitioner to pled *nolo contendere* and try to get a conviction for the lesser-included offense of manslaughter. (R. 7:61-5).

A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady v. United States*, 397 U.S. 742, 755 (1970). When "deception, an unfulfillable promise, or misrepresentation" induces a plea, the plea is involuntary. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

The record reflects that petitioner had a clear understanding of the proceedings against him, the nature of the offense of which he was charged, and the consequences of entering his *nolo contendere* plea. Petitioner has not overcome the presumption of verity accorded solemn declarations he made in open court. As a result of making this plea to the court, trial counsel was able to successfully argue that petitioner was not guilty of murder, and petitioner was instead convicted of the lesser-included offense of manslaughter. Given the totality of the circumstances, it is evident that petitioner fully understood the charge against him and the consequences of his plea. Likewise, it is clear that his plea was entered without coercion. The record does not support a claim

that a misrepresentation by counsel or anyone else induced his plea or reflect that the plea was induced by some unkept promise. His plea appears knowing, intelligent, and voluntary. Petitioner's second ground for relief is without merit and should also be denied.

## V.  PROSECUTORIAL MISCONDUCT

In his third ground for relief, petitioner asserts that his constitutional rights were violated because the assistant district attorney who prosecuted his case told one of the witnesses who testified for the State not to speak to anyone about the case prior to trial. Petitioner does acknowledge that the witness declined to sign an affidavit in support of this claim.

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions by a prosecutor may violate due process in two ways: "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). The Court should "first determine the type or types of misconduct alleged, because '[t]he case law supplies a different test for each kind of due process violation.'" *Id.* at 1316-17 (quoting *Rogers*, 848 F.2d at 608). In this case, petitioner alleges a general violation of due process.

When a petitioner asserts a generic due process violation, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged

14

prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

In federal habeas actions, improper action by the State does not present a claim of constitutional magnitude unless "the prosecutor's acts were so prejudicial as to render a trial fundamentally unfair in violation of the due process clause." *Easter v. Estelle*, 609 F.2d 756, 760 (5th Cir. 1980). To establish such prejudice, "the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the [misconduct] no conviction would have occurred." *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy*, 959 F.2d at 1317 (internal quotation marks omitted).[6] Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper and, if so, they then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When addressing this issue at the state habeas level, the trial court found that petitioner had failed to present evidence to support this allegation and had failed to present evidence that the prosecutor attempted to tamper with the witness's testimony. The trial court further found that the testimony was not favorable to the State, and that the evidence reflected no coaching by the prosecutor because the witness's statement to the police and her testimony were consistent. (S.H.Tr.:30). The trial court then concluded that petitioner had failed to prove his claim and that

---

[6] This is the only test necessary to apply for generic violations of due process. If the alleged misconduct rises to the level of constitutional error, the Court need not apply a harmless error test. *Darden*, 477 U.S. at 183 n.15. The Fifth Circuit has observed that application of a harmless error test would be "superfluous" after a determination that the trial was rendered fundamentally unfair. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985).

even if the court accepted his argument, he was not entitled to relief because there was no showing that the prosecutor acted intentionally to mislead or cause the trial to be unfair. (S.H.Tr.:31). Relief was denied on the basis of these findings. This denial is not contrary to federal law.

First, petitioner has failed to present any evidence that the prosecutor's actions were improper. He has not shown that the prosecutor instructed a witness not to speak to others about the case, much less that she attempted to tamper with the witness's testimony. Second, petitioner has failed to either allege or prove that any alleged misconduct rendered his trial fundamentally unfair. As noted by the state habeas court, the testimony was not favorable to the State. The witness testified that she was a waitress at the restaurant, that she had a good rapport with petitioner while she waited on his table, and that she did not see anyone pick up a bottle of wine and hit anyone with it. (R. 4:114-24). Although petitioner contends that there may be other witnesses who were instructed by the prosecutor not to speak to others about the case, this is merely a conclusory allegation that does not warrant relief. This ground for relief is without merit and should be denied.

## VI. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VII. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 30th day of October, 2009.**

*[signature: Irma Carrillo Ramirez]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE